**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS GAFFNEY,** | ) | **CASE NO.1:06CV2444** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **JOHN E. POTTER, POSTMASTER** | ) | **OPINION AND ORDER** |
| **GENERAL, UNITED STATES POSTAL** | ) | |
| **SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant United States Postal Service's ("USPS") Motion for Summary Judgment (ECF# 11). For the following reasons, the Court grants Defendant's Motion and dismisses Plaintiff's Complaint.

The Complaint alleges Plaintiff was unlawfully terminated from his employment with Defendant on the basis of his race and age, in violation of Title VII of the United State Code and the Age Discrimination in Employment Act of 1967 ("ADEA"). Plaintiff's Complaint seeks declaratory and injunctive relief and damages.

**FACTS**

Plaintiff Thomas Gaffney is a Caucasian male born in 1946. On October 16, 2004, Plaintiff was hired by Defendant as a probationary part-time flexible city carrier at the East Cleveland Station of the USPS. On December 2, 2004, Defendant terminated Plaintiff's

1

employment. There is no dispute Plaintiff exhausted his administrative remedies prior to filing this suit.

### **Plaintiff's Allegations**

Plaintiff contends he was fifty-eight years old at the time of his termination, placing him in the protected class under the ADEA. On October 30, 2004, approximately two weeks after Plaintiff was hired, Defendant hired Anthony Gibson, a forty-three year old African-American, for the same position, at the same facility, as a probationary employee. Plaintiff was terminated for allegedly untimely mail deliveries on December 2, 2004. Anthony Gibson was terminated for untimely mail deliveries on January 22, 2005. Therefore, Plaintiff contends he was not given the same treatment as a similarly-situated younger African-American probationary employee because Gibson's employment period exceeded Plaintiff's by approximately thirty-five days.

Defendant contends Plaintiff was a probationary employee subject to summary termination. Plaintiff received a review of his performance thirty days after he was hired and was repeatedly told by supervisors Dorris Horn and Charles Delae he needed to improve his speed of delivery. The review shows Plaintiff received four "Unsatisfactory" ratings and two "Satisfactory" ratings. Plaintiff's first evaluation was performed by supervisor Charles Delae and on November 29, 2004, Ernestine Underwood called Plaintiff into her office and informed him his performance was unacceptable and his employment with the USPS was going to be terminated. Plaintiff asked her for additional time to show he was improving. Shortly thereafter, Plaintiff was informed by supervisor Charles Delae he was fired. Plaintiff can point to no evidence of unlawful discrimination except for his contention that he was treated differently than a similarly-situated non-Caucasian substantially younger male.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the

burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

**Reverse Discrimination based on Race**

Title VII of the United States Code makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1).

"A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination." *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004). "Mere personal belief, conjecture and speculation are insufficient to support an inference of...discrimination." *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 247 (6th Cir. 1997).

Direct evidence is evidence "which, if believed, proves the existence of improper discrimination animus without inference or presumption." *Williams v. United Dairy Farmers,* 20 F. Supp.2d 1193, 1198 (S. D.Ohio 1998). In *Talley v. Bravo Pitino Rest.,* 61 F.3d 1241, 1248-49, (6th Cir. 1995), the Sixth Circuit provided examples of direct evidence of racial animus. These included racial slurs by a manager, a principal stating a "white presence" needed to be maintained in a recently integrated school to prevent white flight, and employee testimony that

managers made derogatory racial remarks about blacks. Discriminatory remarks by a manager may be evidence of discrimination even if the manager was not the ultimate decision maker. *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 354-55 (6th Cir. 1998). However, in *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir. 1993), the Sixth Circuit stated "[c]ase precedent clearly reflects that isolated and ambiguous statements ⋯ are too abstract, in addition to being irrelevant and prejudicial" to support a discrimination claim. "Direct evidence generally requires unmistakable verbal assertions that the plaintiff was treated adversely because of his race." *Paasewe v. Ohio Arts Council*, 74 Fed.Appx. 505, 507 (6th Cir. 2003) citing *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998).

### **McDonnell Douglas/Burdine Analysis**

In the absence of direct evidence of discrimination, the Court will apply the *McDonnell Douglas/Burdine* burden shifting analysis. It is plaintiff's burden to prove a prima facie case of discrimination by his or her employer. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, (1973). *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, (1981). Upon plaintiff making a prima facie showing of discrimination, the burden "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253, (quoting *McDonnell,* 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

"To establish a prima facie case of discrimination based upon circumstantial evidence,

Plaintiff must show that he (1) "is a member of a protected group," (2) "was subject to an adverse employment decision," (3) "was qualified for the position, and (4) "was replaced by a person outside of the protected class." *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 349 (6th Cir.1997). In addition, under section (4) Plaintiff may meet his burden by showing he was treated differently than similarly situated non-protected employees. See *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 461 (6th Cir. 2001). "In adapting the *McDonnell Douglas* test to cases of reverse discrimination, this Circuit has held that, under the first prong, a plaintiff must demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" <u>*Vitt v. City of Cincinnati,*</u> 97 Fed. Appx. 634, 639 (6th Cir. 2004) quoting *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985), *see also Zambetti v. Cuyahoga Community College,* 314 F.3d 249, 256 (6th Cir.2002) (the evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely"). "To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly-situated but were not members of the protected class." *Vitt,* at 639, citing *Sutherland v. Mich. Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir.2003). The burden of establishing a prima facie case under *McDonnell Douglas* is not onerous. *Burdine,* at 251.

Though the Sixth Circuit has not established a bright line test for what constitutes "background circumstances sufficient to support the first prong in a reverse discrimination claim, this Court looks to prior decisions for guidance. In *Kimble v. Intermetro Industries,* 288 F. Supp.2d 876, 880 (N.D. Ohio 2003), the Court found Plaintiff had failed to demonstrate sufficient background evidence that the employer was the unusual employer who discriminates

against the majority. In *Kimble*, Plaintiff was a male employee alleging reverse sex discrimination. The evidence showed the employer hired more men than women, and there was no external or internal pressure to hire more women and the management team consisted of more men than women.[1]

### Discrimination Based on Age

"Claims under the ADEA are typically analyzed within the framework set forth in *McDonnell Douglas*." *Bush v. Dictaphone Corp.,* 161 F.3d 363, 368 (6th Cir.1998). Plaintiff has the burden of demonstrating a *prima facie* case of age discrimination by showing : (1) he was a member of the protected class (over age forty); (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Phelps v. Yale Security, Inc*., 986 F. 2d 1020, 1023 (6th Cir. 1993), or he was treated differently than a similarly situated employee who was not a member of the protected class. See *Hein v. All American Plywood Co.,* 232 F.3d 482, 489 (6th Cir.2000).

---

[1] *Kimble* at 880, cites the following cases demonstrating what evidence other Courts considered sufficient to satisfy the background circumstances prong. "*Reynolds v. School Dist. No. 1,* 69 F.3d 1523 (10th Cir.1995) (the plaintiff was the only white employee in an otherwise all-Hispanic department and Hispanic supervisors made most employment decisions); *Bishopp v. District of Columbia,* 252 U.S.App. D.C. 156, 788 F.2d 781 (D.C.Cir.1986) (the defendant promoted less qualified minority employee; use of subjective rather than objective criteria; internal and external pressure to favor minorities); *Lanphear v. Prokop,* 227 U.S.App. D.C. 89, 703 F.2d 1311 (D.C.Cir.1983) (qualified white passed over for black whose qualifications were not fully checked; pressure to increase minority percentages). We cite ... [these Title VII] cases to illustrate the kind of evidence plaintiff might have brought forward, if it had been available, to satisfy the first element of his prima facie case. [*Allen v. Comprehensive Health Serv.,*] 222 Mich.App. 426, 434, n. 6, 564 N.W.2d 914 [ (1997). ] *See also, Murray v. Thistledown Racing,* 770 F.2d 63, 68 (6th Cir.1985) (suggesting that reverse discrimination plaintiff might have satisfied the "background circumstances" prong of the test had he been able to show that the employment practices at issue were grounded in an affirmative action program.)
*Comiskey v. Automotive Indus. Action Group,* 40 F.Supp.2d 877, 892 (E.D.Mich.1999)."

**ANALYSIS**

The record is wholly devoid of any alleged discriminatory statements made by a supervisor or manager of Plaintiff regarding his race or age. The Plaintiff can point to no evidence of discriminatory animus by a decision maker, nor can he point to a decision maker influenced by a non-decision maker's discriminatory animus, apart from his disparate treatment claim. Therefore, the Court finds no direct evidence of age or race discrimination and applies the *McDonnell/Burdine* burden shifting analysis to Plaintiff's claims.

It is undisputed Plaintiff was a member of the protected class based on his age of fifty-eight for purposes of the ADEA and, as a Caucasian, could bring a reverse discrimination claim based on race. Plaintiff alleged sufficient background circumstances to satisfy, at the prima facie stage, Defendant was that unusual employer who discriminates against the majority. Plaintiff testified all his supervisors were African-American and ninety percent of the work force at the East Cleveland station were African-American. Plaintiff was terminated from his employment which satisfies the adverse employment prong of his prima facie under the ADEA and Title VII.[2] (See *Burlington Industries v. Ellerth,* 524 U.S. 742, 761 (1998)).

Plaintiff and Anthony Gibson were both part-time flexible carriers at the East Cleveland facility. For purposes of demonstrating a *prima facie* case under *McDonnell/Burdine*, the

---

[2] Defendant contends Plaintiff alleges other adverse employment actions that were not alleged in his Complaint or raised in his EEOC complaint. Specifically, Defendant contends Plaintiff's argument that Anthony Gibson was given a longer probationary employment period is an attempt to substitute the truncated employment period for the termination as the adverse employment action. This Court finds Plaintiff admits the termination was the adverse employment action and the difference in the employment periods of Plaintiff and Gibson is offered by Plaintiff as evidence of disparate treatment and the Court will consider the differing periods of employment as evidence of disparate treatment and not as an additional adverse employment action. The Court will do the same for Plaintiff's contention he did not receive dog spray on his routes as opposed to Gibson who allegedly did receive dog spray.

Plaintiff and his comparator must be similarly-situated in all relevant aspects.  The Sixth Circuit has held the relevant aspects to be "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 659 (6th Cir. 1999) citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

There appears to be a genuine question as to who made the ultimate decision to fire Plaintiff.  In an earlier EEOC investigation, Plaintiff's immediate supervisor, Charles Delae, testified he made the decision to terminate Plaintiff.  In depositions in the case at bar, Delae testified Ernestine Underwood made the decision to terminate Plaintiff.  Underwood testified that she, Matara Johnson, and Delae were all involved in the decision to terminate Plaintiff.  Johnson denies any involvement in the decision and denied she had any supervisory responsibilities for Plaintiff.

Plaintiff contends a key piece of evidence is missing, demonstrating pretext on the part of Defendant.  At the East Cleveland office, a supervisor assigns a carrier to a particular route and allocates an amount of time to deliver the route.  This information is entered into the DOIS system, the USPS computer program designed to track the delivery time of each carrier.  Supervisors review the DOIS reports regularly to determine if carriers are meeting the allocated time for deliveries.  Plaintiff contends Defendant has failed to provide all the relevant DOIS information.  Plaintiff further contends Defendant has admitted the information is not available, as it was not retained when Defendant was under an obligation to preserve the information.  Due

9

to Defendants improper destruction of evidence, Plaintiff contends he is entitled to a presumption that the evidence destroyed was adverse to Defendant's position.

Defendant argues the missing DOIS information is irrelevant because the raw data inputted into the DOIS system, for the most part, was recovered and provided to Plaintiff. That data wholly supported Defendant's position that Gibson outperformed Plaintiff. Furthermore, the USPS policy was to retain DOIS records for one year. Finally, Defendant contends the DOIS information was irrelevant to the case at bar because there was no dissimilar treatment of Plaintiff and his comparator. Both were terminated during their probationary periods for failure to timely deliver mail.

Plaintiff's age and race discrimination claims fail to meet the prima facie requirements under *Kline*. Plaintiff cannot demonstrate Anthony Gibson was a similarly-situated employee for purposes of demonstrating disparate treatment. Furthermore, even if Anthony Gibson were a similarly-situated employee, Plaintiff cannot demonstrate he was treated differently than Gibson since Gibson was terminated for the same reasons Plaintiff was terminated during his probationary employment period.

It is undisputed that Plaintiff and Gibson had different immediate supervisors. It is undisputed Gibson received a better thirty day review than Plaintiff. Pursuant to *Hollins/ Mitchell*, Plaintiff had to demonstrate he and Gibson "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." The Sixth Circuit appears to be moving away from a hard and fast rule that parties must have dealt with the same supervisor. See *McMillan v. Castro*, 405 F.3d 405, 413-414 (6th

Cir. 2005). However, the facts before this Court place great relevance on the difference in the immediate supervisors, since the thirty day reviews of Plaintiff and Gibson were the alleged basis for Gibson's longer term of employment. Plaintiff's supervisor, Charles Delae, gave Plaintiff four "Unsatisfactories" out of six evaluated categories. Gibson's supervisor, Matara Johnson, gave him three "Unsatisfactories" out of six evaluated categories. Because the evaluations involve a certain amount of subjective analysis on the part of the immediate supervisor, it is that subjective nature of the evaluation process that makes comparisons between employees with different supervisors problematic. Because the evidence demonstrates a different supervisor gave Gibson higher marks, justifying Gibson's longer term of employment, this Court finds Plaintiff was not similarly situated to Gibson because they had different immediate supervisors.

Furthermore, the *Mitchell* analysis requires Plaintiff demonstrate that he and Gibson were subject to the same standards and engaged in the same conduct without differentiating or mitigating circumstances. Although the supervisors utilized the same standardized evaluation form, they were required to rank the employee on a subjective scale for such performance criterion, i.e. productivity, conscientiousness, cooperation, conduct, etc. While both were unable to perform their jobs to their supervisors' satisfaction, Gibson received higher marks from his supervisor than Plaintiff received from his. In Gibson's case, Matara Johnson decided, after eighty days of employment, she could not recommend Gibson for employment and entered her recommendation on his review. In Plaintiff's case, it was Ernestine Underwood who indicated Plaintiff's thirty-day review that she could not recommend him for continued employment. This presents a differing or mitigating circumstance which Plaintiff cannot overcome, in spite of the

11

conflicting testimony presented by some of the supervisors in this case.

Also, the higher marks received by Gibson present a clear case of differing or mitigating circumstances distinguishing Plaintiff from Gibson. Because it is undisputed Gibson received a better thirty day review, his superior performance warranted an additional, albeit short, period of additional employment. Therefore, Plaintiff has failed to demonstrate he was similarly situated to Gibson in all relevant respects and has failed to demonstrate a prima facie case that he was treated differently than a similarly situated individual that was younger or in a protected class.

Even if Plaintiff could show he was similarly situated to Gibson, he has failed to make a prima facie showing he was treated differently. Both Plaintiff and Gibson were terminated during their probationary period. In the case of *Noble v. Brinker International, Inc.,* 391 F.3d 715, 728 (6th Cir. 2004), the Sixth Circuit held, "absent proof that employees outside the protected class were similarly situated but were not discharged" plaintiff failed to present evidence upon which a reasonable jury could have concluded a defendant intentionally discriminated against plaintiff in a Title VII employment case. Here, Plaintiff's claims suffer from the same fatal flaw. Both he and his comparator suffered the same adverse employment action. Both were terminated during their probationary period for failing to timely deliver mail. Gibson's additional thirty plus days of employment can be attributed to better scores on his initial evaluation. Therefore, even if Plaintiff could show he and Gibson were similarly situated, he has failed to show he was treated differently than Gibson. As Defendant correctly points out, the very mission of the USPS is to provide, "prompt, reliable and efficient services to patrons" and its statutory mandate is to "give the highest consideration to the requirement for the most expeditious collection, transportation and delivery" of mail. 39 U.S.C. §101(a), (e), §403(b)(1).

It is undisputed that the USPS has the right to terminate any probationary employee at any time during the probationary period.  The USPS has every right to terminate employees unable to provide the "expeditious" delivery of mail mandated by law.  Plaintiff has failed to show his termination was the result of anything other than his inability to do so.

Finally, the disputed contention that Plaintiff was never issued dog spray while Anthony Gibson was issued the spray fails to satisfy the disparate treatment prong of a Title VII or ADEA claim, in this Court's opinion.

Because Plaintiff cannot show dissimilar treatment based on age or race, this Court finds Plaintiff has failed to make a prima facie showing of disparate treatment.  Therefore, the Court grants Defendant's Motion for Summary Judgment on all Plaintiff's claims.

IT IS SO ORDERED.


 November 19, 2007                         s/Christopher A. Boyko
 Date                                      CHRISTOPHER A. BOYKO
                                           United States District Judge